# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

**DONALD D. MONTOYA,**

       Plaintiff,

vs.                                                                      Civ. No. 04-1357 ACT

**JO ANNE B. BARNHART,**
**Commissioner of Social Security,**

       Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court upon Plaintiff's Motion to Reverse or Remand the Administrative Decision filed May 20, 2005. Docket No. 14. The Commissioner of Social Security issued a final decision denying benefits finding that Plaintiff was not disabled. Having considered the Motion, the memoranda submitted by the parties, the administrative record and the applicable law, the Court finds that the motion is well taken.

## I.  PROCEDURAL RECORD

Plaintiff, Donald D. Montoya, filed an application for Social Security disability insurance benefits on March 1, 2002.[1] Tr. 64. He is alleging a disability since March 31, 2000, due to a bulging disc in his lumbar spine, cervical pain, and vision and hearing problems. Tr. 68. His application was denied at the initial and reconsideration level.

---

[1] Both Plaintiff and Defendant state that Plaintiff filed a application for Supplement Security Income on March 1, 2002. However, the application for Supplemental Security Income in the record was filed by Lorraine Armijo, who appears to be Plaintiff's spouse. Tr. 209.

The ALJ conducted a hearing on June 3, 2003.  At the hearing, Plaintiff was represented by a non-attorney.  On  August 14, 2003,  the ALJ issued an unfavorable decision finding at step five that Plaintiff had the capacity for a significant range of sedentary work.  Tr. 28-29.

On October 19, 2004, the Appeals Council issued its decision denying Plaintiff's request for review and upholding the final decision of the ALJ.  Tr. 6-8.  The Plaintiff subsequently filed his Complaint for judicial review of the ALJ's decision on December 3, 2004.

## II.  STANDARD OF REVIEW

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether she applied correct legal standards.  *See Hamilton v. Secretary of Health and Human Services*, 961 F.2d 1495, 1497-98 (10th Cir. 1992).  Evidence is substantial if "a reasonable mind might accept [it] as adequate to support a conclusion."  *Andrade v. Secretary of Health and Human Svcs.*, 985 F.2d 1045, 1047 (10th Cir. 1993)(quoting *Broadbent v. Harris*, 698 F.2d 407, 414 (10th Cir. 1983)(citation omitted)).  A decision of an ALJ is not supported by substantial evidence if other evidence in the record overwhelms the evidence supporting the decision.  *See Gossett v. Bowen*, 862 F.2d 802, 805 (10th Cir. 1988).

In order to qualify for disability insurance benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months, which prevents the claimant from engaging in substantial gainful activity.  *See* 42 U.S.C. §423(d)(1)(A); *see also Thompson v. Sullivan*, 987 F.2d 1482, 1486 (1993).  The regulations of the Social Security Administration require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications.  20 C.F.R. § 404.1520(a-f).  The sequential evaluation process ends if, at any step, the Commissioner finds the claimant is not disabled. *See Thompson*, 987

F.2d at 1487.

At the first four levels of the sequential evaluation process, the claimant must show: 1) he is not engaged in substantial gainful employment; 2) he has an impairment or combination of impairments severe enough to limit his ability to do basic work activities; 3) his impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1; or 4) he is unable to perform work he had done in the past. 20 C.F.R. §§ 404.1520 and 416.920.  At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering his residual functional capacity, age, education, and prior work experience. *Id.*

### III. MEDICAL HISTORY

Plaintiff was seen at the University of New Mexico Hospital ("UNMH") for back pain in February of 2002 and was prescribed Zoloft[2] and Valium[3]. Tr. 161. When he was seen again at UNMH in October of 2002, it was noted that he suffered from anxiety for one year and had a problem with his memory. Tr. 159. On October 22, 2002, Jennifer Jernigan, M.D. recorded in the medical record that Plaintiff had "anxiety" and previously tried Zoloft and Effexor[4]. Tr. 153. He had stopped taking the Effexor because he felt sedated and that thought it may have increased his anxiety. It was further noted that he had tried amitriptyline but had an adverse reaction. He did not want to take any medications at that time. Dr. Jernigan found that Plaintiff had an anxiety disorder and

---

[2]Zoloft is indicated for the treatment of major depressive disorder and panic disorder. *Physicians Desk Reference* ("PDR"), 59th ed., p. 2681 (2005).

[3]Valium is indicated for the management of anxiety disorder. *Id*. at 2957.

[4]Effexor in indicated for the treatment of major depressive disorder. *Id.* at 3321.

planned to refer him to the Mental Health Center if he was unable to obtain counseling assistance through the Pain Clinic. Tr. 154. On March 25, 2003, Dr. Thomas Whalen of the Pain Management Clinic found that Plaintiff had a "[s]ignificant anxiety disorder." Tr 234. The next record concerning Plaintiffs mental health is dated September 12, 2003. Tr. 251. The record notes that Plaintiff has an anxiety disorder and was taking Valium. Tr. 251. A six page Behavioral Health Intake Comprehensive Assessment Tool was completed on October 8, 2003. Tr. 252-58. This record notes that Plaintiff self referred for evaluation of his anxiety. He was currently taking Valium. Tr. 253. He described his anxiety as a feeling that his "abdomen has been replaced by that of another person and organs are fighting to accommodate." Tr. 255. Dr. Wood found that Plaintiff had a "subtle psychosis" and was "too anxious to cooperate." Tr. 257. He prescribed Klonopin.[5]

Plaintiff had a follow up visit on October 15, 2003. Tr. 260. Plaintiff reported that Klonopin had helped reduce his anxiety and he was better able to organize his thoughts. Tr. 260. However, he reported problems with comprehension of written and verbal information. The counselor noted that Plaintiff was better than he had been at the first visit, but that he "continues with unusual presentation/expression. Less overinclusive than previously but still needs help maintaining focus and narrowing extraneous detail." Tr. 260. Dr. Wood prescribed Risperdal.[6] At a following visit on November 134, 2003, Plaintiff was "markedly improved." However, Dr. Wood diagnosed him with "psychosis, NOS 298.9." Tr. 259.

Plaintiff underwent a psychiatric assessment in December of 2003. He was found to be moderately ill and was diagnosed with an unspecific psychotic disorder and panic disorder with

---

[5]Klonopin is indicated for the treatment of panic disorder. *Id*. at 2895.

[6]Risperdal is indicated for the treatment of schizophrenia and bipolar mania. *Id*. at 1742.

4

agoraphobia. Tr. 249-50. His Global Assessment of Functioning ("GAF") was found to be at 30 which indicates that "[b]ehavior is considerably influenced by delusions or hallucinations OR serious impairment in communication or judgment (e.g., sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) OR inability to function in almost all areas (e.g. stays in bed all day; no job, home, or friends)."[7]

On January 21, 2004, a physician at the UNM Psychiatric Center prescribed Klonopin. Tr. 247. On February 4, 2004 Plaintiff reported that his anxiety had not improved. Tr. 246. The final medical record is dated June 21, 2004. Plaintiff told his counselor that he had shortness of breath when he was in public. Tr. 245. He was again diagnosed with an unspecified psychotic disorder and panic disorder with agoraphobia.

## IV. DISCUSSION

Plaintiff asserts that the ALJ erred in: 1) finding at step two that Plaintiff's mental impairment was not severe; 2) relying on the testimony of the vocational expert; and 3) in her analysis of Plaintiff's pain. Because the Court finds that the ALJ erred at step two, the Court need not address Plaintiff's remaining arguments.

At step two, the claimant must show that he has an impairment or combination of impairments severe enough to limit his ability to do basic work activities. 20 C.F.R. § 404.1520(c). Examples of basic work activities that pertain to mental impairments include (1) understanding, carrying out, and remembering simple instructions, (2) use of judgment, (3) responding appropriately to supervision, and (4) dealing with changes in a routine work setting. 20 C.F.R. § 404.1521(b). At step two, the

---

[7]American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 1994).

ALJ must apply a *de minimus* standard to determine whether an impairment significantly limits the claimant's ability to do basic work activity. *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988). Only the most trivial impairment is not considered severe. *Taylor v. Bowen*, 738 F. Supp. 436, 440 (D. Kan. 1987). If the evidence is unclear as to whether the impairment is severe or not the sequential evaluation process continues. *Social Security Ruling 85-28*. At this step, the Commissioner relies only on the medical evidence to determine whether an impairment is severe. *Id*.
.

In her decision, the ALJ wrote the following regarding Plaintiff's alleged mental impairment:

The claimant alleged "anxiety." Jennifer Jernigan, M.D., the claimant's doctor at the clinic, offered the claimant mediation to help deal with the anxiety (Exhibit 5F7).   However, the claimant was "not interested in taking any medication for this at this    time." He was told if he could not get help for his anxiety at the Pain Clinic, he         would be referred to the Mental Health Center. Dr. Jernigan referred to claimant as "somewhat anxious." The claimant's's anxiety is not so severe as to meet any of the       listings and does not impair any of his work related activities. Tr. 26.

After the decision by the ALJ, the Plaintiff submitted additional evidence of his alleged mental impairment to the Appeals Council.[8] When new and material evidence is submitted to the Appeals Council, the Appeals Council "shall" consider the additional evidence only when it relates to the period on or before the date of the ALJ's hearing decision. 20 C.F.R. §§404.970(b), 416.1470(b). If the Appeals Council denies review after considering the additional evidence, the ALJ's decision stands as the final decision, but the administrative record reviewed on judicial appeal includes the new evidence submitted to the Appeals Council. *O'Dell v. Shalala*, 44 F.3d 855, 858-59 (10th Cir. 1994). In this case, the Appeals Council considered the additional evidence but found that it did not relate

---

[8]The records submitted to the Appeals Council are dated from September 12, 2003 to June 21, 2004, Tr. 245-260.

to the period on or before the date of the ALJ's decision. Tr. 7. Thus, the Court must consider the entire record, including the new evidence, in conducting a review for substantial evidence on the issues presented.

Based on the Court's review of the entire record, a remand is required. The ALJ appears to have made her decision regarding Plaintiff's alleged mental impairment on the fact that the Plaintiff declined treatment or he was noncompliant with treatment. This is error. The regulations permit the Commissioner to deny benefits if the claimant does not have a "good reason" for his failure to follow prescribed treatment. 20 C.F.R. §§ 404.1530.416.930. The ALJ failed to make any analysis as to whether Plaintiff's refusal of medication on one visit was unreasonable. If the ALJ's reasoning was that the Plaintiff was noncompliant the ALJ also failed to perform the correct analysis. If the ALJ bases her decision on noncompliant the ALJ must give sufficient reasoning in her decision.

> The ALJ's speculative conclusion is procedurally and legally deficient because he did not make the findings necessary to deny the claim on the basis of claimant's noncompliance with prescribed treatment, nor did he give claimant or her treating physician an opportunity to explain the specific reasons for her failure to take medications to determine if justifiable cause existed for her failure. See 20 C.F.R. §§ 404.1530 and 416.930; Soc. Sec. R. 82-59, 1982 WL 31384. *Robinson v. Barnhart*, 366 F.3d 1078, 1083-84 (10th Cir. 2004).

The ALJ's opinion does not meet this standard.

Moreover, the new evidence contained in the records from UNM Mental Health Center should be considered. In considering the record as a whole, the Court cannot say that substantial evidence supports the ALJ's decision at step two that Plaintiff's alleged mental impairment was not severe. Plaintiff had a diagnosed mental illness and was put on medication. The medical records contain evidence that Plaintiff's illness impairs his ability to work. Of particular significance is the Plaintiff's GAF of 30.

"Standing alone, a low GAF score does not necessarily evidence an impairment seriously interfering with a claimant's ability to work...A GAF score of fifty or less, however, does suggest an inability to keep a job. (citation omitted) In a case like this one, decided at step two, the GAF score should not have been ignored." *Lee v. Barnhart,* 117 Fed. Appx. 674, 678 (10th Cir. 2004).

For all the foregoing, the Court finds that this matter should be remanded to the Commissioner for proceedings consistent with this Memorandum Opinion and Order.

In conclusion, the court is not mandating or indicating a particular result. The remand, instead "simply assures that the correct legal standards are involved in reaching a decision based on all the evidence in the case." *Kepler v. Chater*, 68 F.3d 387, 392 (10th Cir. 1995).

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Reverse or Remand Administrative Decision is granted for proceedings consistent with this opinion.

_____
**ALAN C. TORGERSON**
**UNITED STATES MAGISTRATE JUDGE,**
**PRESIDING**